(161 App. Div. 180)

### INTERNATIONAL PAPER CO. v. ROCKEFELLER.

(Supreme Court, Appellate Division, Third Department. March 4, 1914.)

1. SALES (§ 418*)—SELLER'S CONTRACT—BREACH—DAMAGES.

   The measure of damages for a seller's breach of a contract to deliver spruce wood for the making of paper pulp was the difference between the contract price and the price at which wood could be purchased or procured at the place of delivery.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

2. SALES (§ 416*)—CONTRACT—BREACH BY SELLER—EVIDENCE.

   In an action for breach of a contract to sell spruce timber from a specified tract of land, defendant was entitled to show his understanding at the time he executed the contract of the amount of green spruce on the tract.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1171, 1172; Dec. Dig. § 416.*]

3. SALES (§ 172*) — CONTRACT — BREACH BY SELLER — CONSTRUCTION OF CONTRACT.

   Where a contract for the sale of green spruce timber for the manufacture of paper contemplated a delivery of timber from a specified tract of land, the contract was conditional on the continued existence of such timber on the land, and, the same having been destroyed by fire without the seller's fault, he was relieved from liability for further performance.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 425–430; Dec. Dig. § 172.*]

Appeal from Trial Term, Saratoga County.

Action by the International Paper Company against William Rockefeller. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, and from an order granting plaintiff an additional allowance of costs, defendant appeals. Reversed. New trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Kellas & Genaway, of Malone (John P. Kellas, of Malone, of counsel), for appellant.

Frank L. Bell, of Glens Falls (Edgar T. Brackett, of Saratoga Springs, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JOHN M. KELLOGG, J.   The action is brought to recover damages on account of the failure of the defendant to deliver pulp wood as agreed.   The agreement between the parties, dated July 5, 1899—

"Witnesseth: Whereas, William G. Rockefeller has entered into a contract with the Kingsley Lumber Company, dated June 9, 1899, for the purchase of certain timber lands and property in Franklin county, New York, therein more particularly described, and has assigned the same to the party of the first part.

"And whereas, the party of the second part is desirous of purchasing wood now on the said lands from the party of the first part, which the latter is willing to sell if he acquires the title to the said lands under the said contract:

"Now, therefore, the parties hereto, in consideration of the premises, and of the sum of one dollar by each to the other in hand paid," etc.

It then provides that if the defendant acquires the land he agrees to sell and deliver on the cars, at the mills of the plaintiff at Cadyville, during the year 1899, 6,000 cords of wood, and during each of the next five years from January 1, 1900, to January 1, 1905, not less than 10,-000 cords of wood per year, with the right to the plaintiff to require an additional amount in any year, not to exceed 2,000 cords, by giving the notice required.   The wood was to be cut from live spruce trees. Deliveries for the year 1899 were to commence not earlier than October 1st, and continue on an average of about 1,000 cords a month "after connection has been established by the Chateaugay Railroad Company."   In the successive five years deliveries were to be on the average about 800 to 1,000 cords of wood a month, commencing January 1, 1900.   The plaintiff agreed "to purchase and accept the said wood, as herein before provided, and pay for the same" $5.50 per cord.

The defendant did not in any year deliver the amount of wood stated. In 1899 no wood was delivered.   In 1900 there was a deficiency of 4,956.75 cords;  in 1901 of 5,679.86 cords;  in 1902 of 5,597.75 cords; in 1903 of 7,999.01 cords;  in 1904, giving credit for the deliveries after that year, the deficiency was 3,511.87.   The defendant has in fact delivered not quite one-half the amount of wood required.   In the year 1903, the particular time of year not appearing, more than one-half of the lands referred to in the contract, the part not cut, was burned over, and substantially all the spruce killed by fire.   Aside from the wood delivered to the plaintiff, there remains about 550 cords upon the top of the high mountain which could have been cut and furnished as pulp wood; but the expense of obtaining and delivering it would have been about $20 a cord.

[1, 2]   The contract having been executed under seal, the plaintiff's remedy is not barred by the statute of limitations.   The defendant having defaulted in delivering the wood at Cadyville, the measure of damages was the difference between the contract price and the price at which wood could be purchased or procured at Cadyville.   It is evident that there was no market at or near Cadyville at which the large quantities of wood required to fulfill the contract could be bought, and it became necessary to purchase a part of it in Canada, which apparently was the next most favorable market.   The charge placed the matter of damages before the jury in a manner not prejudicial to the defendant.   The defendant was entitled to show his understanding at

the time he executed the contract of the amount of green spruce upon the tract. This might have a bearing upon the interpretation of the contract, and might explain the fact that some spruce from the tract, during the continuance of the contract, was sold to others.

The difficulty arises with reference to the contention of the defendant that the destruction of the green spruce by fire excused him from making deliveries thereafter. Clearly he is liable for all deficiencies occurring prior to the fire. The contract was made under the following circumstances: In 1899 the De Bar Mountain tract, containing about 16,000 acres, belonging to the Kingsley Lumber Company, was for sale. It was woodland, with a large quantity of growing spruce. It was connected by a spur with the New York Central Railroad, a broadgauge road, and near the Central Railroad at that point was the Chateaugay Railroad, a narrow-gauge road. From the lands to the Cadyville mill by the Central road was a long and circuitous route; by the Chateaugay road it was substantially a direct line. The accessibility of woodland to a railroad connection, and the freight charges, are an important element in furnishing pulp wood to a given mill. The defendant owned other spruce lands in Franklin county, upon which no lumbering was being done except the cutting and marketing of wood which had been killed by fires. These lands were about 30 miles away in an air line, about 100 miles by rail, and lumbering from them for the Cadyville mill would make necessary the transfer of pulp wood from a broad-gauge to a narrow-gauge car in order to use the Chateaugay road; otherwise it would be necessary to carry it a much greater distance.

One Hibbard applied to the plaintiff in 1889, informing it that he was contemplating purchasing the Kingsley lands, and proposed a pulp wood contract. Negotiations proceeded between them which finally resulted in the contract in question, which was prepared by Hibbard, and was executed by the defendant and the plaintiff. The defendant had nothing to do with the plaintiff in the making of the contract, and had made no examination of the property. Hibbard was supposed to have an interest in the De Bar Mountain tract, and was to take charge of the management of it and the getting out of the pulp wood. He was to receive one-third of the profit, and the defendant two-thirds in addition to interest upon his investment. It does not appear that Hibbard and the defendant had any other relations except with reference to these lands, or that Hibbard was interested in any other pulp wood or pulp wood lands. The lands upon which green spruce was growing in the territory fairly tributary to Cadyville were owned principally by the state as a part of the Forest Preserve, by the plaintiff, and by parties with whom the plaintiff had outstanding contracts. Apparently, aside from the Kingsley lands, there were no other lands from which the large quantity of pulp wood agreed to be furnished by the contract could be supplied by defendant in the territory naturally tributary to the Cadyville mill by the Chateaugay Railroad.

The contract by its terms is conditional upon the defendant's acquiring the Kingsley lands; but the plaintiff contends it is a reasonable inference that if the plaintiff acquired the Kingsley lands he was then

willing to contract absolutely for the delivery of the wood, and that the contract does not show that the wood was to be taken from those lands.

[3] While not free from doubt, it seems to me that it was contemplated that the wood to be furnished was to be cut on the Kingsley lands. The statement that the plaintiff was desirous of purchasing the wood now on the lands, and that the defendant was willing to sell it if he acquired the lands, the fact that the contract was conditional upon the purchase, and that the first deliveries in 1899 were dependent upon the connection with the Chateaugay road, which came within a very short distance but would not immediately serve any other wood lands, and the fact that Hibbard was the moving spirit in the matter, was understood to be the party getting out the wood, and apparently had no other relations with the defendant than in lumbering this tract, indicate that the parties had in mind, in making the contract, the lumbering of this tract. We need not say that the defendant could not have furnished live wood of equal quality from other lands; but the contract, read in connection with the known facts, shows the source from which the parties contemplated the wood should be furnished, and when the source is destroyed the defendant is excused from further performance. The defendant did not contract to deliver the wood unless he acquired the Kingsley lands. If all the wood upon the Kingsley lands had been destroyed by fire immediately after the contract was executed, the parties would have been in substantially the same position they would have occupied if the defendant had not acquired the lands. The real reason which induced the contract, and upon which it depended, would have failed.

In an undated letter from Hibbard to the defendant, which was apparent received about December 26, 1899, he refers to the contract as one "for wood on the De Bar Mountain tract for the Cadyville mill." On October 22, 1901, the plaintiff wrote to the defendant complaining that some spruce logs had been sold from the lands, and continued: "We entered into the agreement with Mr. Hibbard with the understanding that we were to have all the spruce wood on this land, although it was not specifically stated that he should not take a small quantity of same for lumber purposes. To the best of my judgment you will not have on this land any more spruce than the contract calls for. I simply call this matter to your attention, for possibly you do not really understand the conditions of the contract as they are being carried out by your representatives."

Under all the circumstances it must be considered that the deliveries of the pulp wood from time to time were conditional upon the continued existence of the green spruce upon the lands not cut over. Buffalo & L. Land Co. v. Bellevue L. & L. Co., 165 N. Y. 247, 59 N. E. 5, 51 L. R. A. 951; Dexter v. Norton, 47 N. Y. 62, 7 Am. Rep. 415; Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167; Herter v. Mullen, 159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517.

We do not know what time in 1903 the fire occurred, nor what the jury determined the damages per cord were during the respective years. We cannot, therefore, modify the judgment by apportioning the dam-

ages, and excusing the defendant for a failure to deliver wood after the fire. The defendant is not excused from delivering the live spruce suitable for pulp wood which survived the fire by the mere fact·that its location upon the tract is such that it would be very expensive for him to deliver it.

The judgment and orders are reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

The findings that the defendant agreed unconditionally to deliver all the pulp wood mentioned in the contract, and that the plaintiff has suffered damages in the amount of $48,000, are reversed as against the evidence, and the findings are made that, considering the circumstances under which the contract was made, the deliveries of wood from time to time were conditional upon the continued existence of the green spruce upon the Kingsley lands not cut over, and that in 1903 the spruce growing upon said lands was substantially destroyed by fire, and that the evidence does not show that the destruction of said spruce was caused by the negligence or fault of the defendant. All concur.