[No. 14118. Department One. September 18, 1917.]

ROBINSON COMPANY, *Appellant,* v. A. F. McCLAINE, *Respondent.*[1]

SALES—SPECIFIC CHATTELS—FAILURE TO DELIVER—DESTRUCTION OF PROPERTY. A sale of hay by correspondence was an executory contract for the sale of specific property, and not an undertaking to deliver a specific quantity, so that the seller would not be liable for failure to deliver where it was totally destroyed without his fault, where it appears that the amount sold was seven hundred tons at $18.50 per ton, that the subject-matter of the contract was hay grown in a certain valley owned by the seller and then in stack and was to be baled pursuant to particular instructions, and that the hay had been described to the buyer.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered February 3, 1917, upon find-

[1]Reported in 167 Pac. 912.

ings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*J. L. Corrigan*, for appellant.

*Oscar Cain*, for respondent.

MORRIS, J.—Action to recover damages claimed upon the alleged breach of a contract to deliver hay.

The contract and failure to deliver is admitted, the defense, sustained by the lower court, being that the hay was a specific lot belonging to respondent and grown upon a Montana ranch, which, subsequent to the contract, was, without fault of the respondent, totally destroyed. The determinative question is, Was it a sale of a specific property or a sale only of a specific quantity? If the first, the judgment is right; if the second, it is wrong. The contract is to be determined from a number of letters between the parties. These letters are as follows:

"Spokane, Washington, January Eleventh, 1916.
"W. W. Robinson & Company,
       "1717 R. R. Avenue,
             "Seattle, Washington.

"Gentlemen: The traffic department of the No. Pac. Railroad, gave me your name as being the purchasers of hay and grain. I have a quantity of Montana timothy hay, which I am anxious to dispose of, and would be glad to hear from you as to whether or not you would be in the market for any of this. This hay is grown in Pleasant Valley, Montana, and is good, clean, timothy, free from other grasses. Shipment will be made from Marion, Montana.

"I could make shipment of a trial car of No. 1 timothy, subject to Washington State grades and weights within a week, and on a trial car, could quote you price of $18 f. o. b. Seattle. Awaiting your reply with interest, I am
             "Very respectfully,
                   "(Signed)   A. F. McClaine,
             "503 Spokane & Eastern Building."

From appellant to respondent:

"Seattle, Jan. 13, 1916.

"Mr. A. F. McClaine,

"503 Spokane & Eastern Bldg.,

"Spokane, Washington.

"Dear Sir: Your favor of the eleventh received. This is to acknowledge it, and, also, to confirm our telephone communication of the twelfth, in which you agreed to sell us, and we agreed to purchase, seven hundred tons (700) of Montana timothy hay of you on basis of $18.50 per ton, Seattle, state weights and grades to govern.

"You also stated that you had a quantity of wild hay and you would send us a few tons of it, and I told you that we would try to handle it for your advantage. We have a certain demand here for wild hay, and upon receipt of this letter I wish you would kindly let me know how much of it you have, and the lowest price you would take for it. It being a little different from other hay, there is no regular market price for it, and we would like to know about what you would want out of it so we would know how to quote it to our trade here.

"As per our conversation, I hope you will instruct your balers to be very particular about stripping the stacks. Throw off all of the doubtful hay, or any that contains snow or ice, and do not bale the bottoms of the stacks if it shows any sign of dampness, or of being spoiled, as it will only cause you, and us both, trouble and a loss.

"Judging from your letter, and the way you talked over the 'phone, and the amount of hay you raised, you are a business man and I know that you do not want to ship anything here that would not be satisfactory, and it never pays to ship musty hay of any kind, such as the bottoms of stacks usually are. I, also, find there is great danger in shipping hay from Montana that contains snow or ice. In that cold country they can bale it up and not be so particular, but if there is much snow or ice baled in the hay when it gets to this warm climate, or what is usually a warm climate, as soon as the snow or ice melts it will start fermentation and will heat and is almost worthless. If you will be good enough to give this some of your personal attention, or have someone upon whom you can thoroughly rely do so, it will undoubtedly save us both considerable trouble and expense.

"We always like to caution our friends about such things, as it has been our policy for the last fifteen years when once we get started to doing business with a man to treat him so that we can continue to do business with him.

"While in your letter you offered to take $18 per ton, Seattle, I felt that on to-day's market your hay, if it was what you state it is, or what you stated you thought it was, it should be worth $18.50 per ton, and I hope it will all grade No. 1, but, of course, I understand from you that some of it is slightly discolored by rain and undoubtedly will not grade up.

"I wish you would kindly arrange to ship us a car each of the poorest and best about the same time, so we can tell about what it is going to be, and, also, if possible put some of the wild hay in one of the first cars.

"Yours truly,

"(Signed)    The W. W. Robinson Company.
"W. W. Robinson, Manager."

From respondent to appellant:

"Spokane, Washington, Jan. 13th, 1916

"W. W. Robinson, Company,
   "1717 Railway Exchange Building,
      "Seattle, Washington.

"Gentlemen: Confirming my telephone conversation with you yesterday, I will deliver to you 700 tons of No. 1 timothy at $18.50 per ton. f. o. b. cars Seattle, subject to Washington State grades and weights. Shipment of first car to be made as soon as possible, and the balance at the rate of about three cars a week. Shipment will be made from Marion, Montana.

"In our telephone conversation, we made no mention in regard to terms. I understand it is the custom to draw for 75 per cent of the value upon shipment, balance to be paid after car is unloaded. However, if it would be more satisfactory to you to remit by check for each car after weighing and grading, that would be satisfactory to me.

"Trusting this hay will prove satisfactory in every way, I am,                     Very respectfully,

"(Signed)    A. F. McClaine,
"per A. F. McClaine, jr."

From respondent to appellant:

"Spokane, Washington, Jan. 15th, 1916.
"W. W. Robinson Company,
    "Seattle, Washington.
"Gentlemen: I have at hand your letter of the 13th, and would say that until I can find out whether or not I will be able to get the wild hay baled and hauled before the break-up, I cannot quote you any price on it. It is quite a long haul to the railroad and it is rather hard to get teams, but if I can arrange it, I will try to get it baled a little later.

"My representative, who has had considerable experience in baling hay in Montana, is there now and I have advised him to use the greatest care in seeing that no snow or ice is baled in with the hay, and that all doubtful or damp hay is thrown out. I am just as anxious to see our hay grade No. 1 as you are and will use my best efforts to see that it comes forward to you in first class condition.

"Thanking you for your courtesy in writing me so fully, and for your good advice regarding the baling, I am,
            "Respectfully,
                "(Signed)    A. F. McClaine,
                    "per A. F. McClaine, Jr."

From respondent to appellant:

"Spokane, Washington, Jan. 17th., 1916
"W. W. Robinson, Company,
    "Seattle, Washington.
"Gentlemen: My representative whom I sent to Kalispell to look after the baling of the hay, returned this morning and informed me that it was absolutely impossible to get into the ranch with the balers for two weeks. The recent heavy snows have blocked the roads entirely, and I will be unable to make shipment to you of any hay until after the first of February.

"I surely regret that conditions are as they are, as I am very anxious to get the hay baled and disposed of, but under the circumstances nothing else can be done except to wait until the roads are broken.
            "Respectfully,
                "(Signed)    A. F. McClaine,
                    "Per A. F. McC, jr."

From appellant to respondent:

"Seattle, Jan. 18th, 1916.

"Mr. A. F. McClaine,

"Spokane, Washington.

"Dear Sir: Your favors of recent date received. I am glad to know you have instructed your man to be careful about baling, because we want to make this transaction so pleasant and profitable to you that we will be able to handle your hay right along in the future. We have a great many shippers who have been doing business with us for fifteen years, and in very rare cases have we ever had any difficulty with anyone. We try to treat our shippers so well that there is no room for any trouble. Of course, you being a business man, will understand once in awhile in dealing direct with a farmer a little unpleasantness will arise, but I know there will be nothing of this kind between us, because I can tell from your letters you are a business man.

"In regard to payment—in dealing with farmers we allow them to draw 75 per cent or 80 per cent on B-L but regular shippers or business men we usually pay for the hay as soon as cars are unloaded and we get certificates from the state. This would be more satisfactory to us, and if satisfactory to you we would prefer to handle the business that way.

"I note that your representative you had sent to Montana has returned, and that it would be impossible to start baling for at least two weeks. This is entirely satisfactory to us, and, in fact, we are glad of it, as we are having a lot of hay come in at this time, which is crowding us a little, but we will be in position to handle your shipments whenever it is most convenient for you to make delivery.

"Your truly,

"(Signed)    The W. W. Robinson Company,

"W. W. Robinson, Manager."

From respondent to appellant:

"Spokane, Washington, February 8th. 1916.

"W. W. Robinson & Company,

"Seattle, Washington.

"Gentlemen: Referring to our recent correspondence regarding timothy hay that was to be baled and shipped to you from Marion Montana, due to the unparalleled weather con-

ditions in the Kalispell district, I will say frankly that it will not be possible to make delivery of any of this.

"Since writing you on January 17, there has been an unprecedented snow fall in the whole Kalispell district. I have made every effort to get local balers to go into the ranch, but everyone has failed me. Two weeks ago I secured a large power baler at Tyler, Washington, and got it as far as Spokane, but to date the railroad company has not moved it east from their local yards and will not give me any promise when they can do so.

"As I stated in our telephone conversation, there is a haul of about sixteen miles from the ranch to the shipping point, and for the last two weeks this road has been blocked with from four to twelve feet of snow, and it is very doubtful in event I can get the baler to Marion, whether it could be hauled into the ranch.

"The meadows and the stacks are covered with four feet of snow and I yesterday received a letter from my representative at Kalispell, saying it was warming up and if the chinook comes, all the hay in the stacks will be ruined.

"I have stated these facts to show that my failure to make delivery of the hay is because it is physically impossible to get the hay baled or hauled.

"Trusting that this explanation will be satisfactory and hoping that we may be able to do some business in future years, I am          Yours very truly,

"(Signed)   A. F. McClaine
"per A. F. McClaine, jr."

From appellant to respondent:

"Seattle, February 10, 1916.
"Mr. A. F. McClaine,
      503 Spokane and Eastern Building,
          "Spokane, Washington.

"Dear Sir: Your favor of the eighth instant received. In reply will say that we have sold some hay against that which we purchased from you, and have turned down other hay that we could have bought, expecting that we would get what we purchased, and we must insist on your delivering the same.

"We are not responsible for the snow, but will say for your information that we have bought a great deal of hay from farmers in the Ellensburg and Yakima districts, whose stacks were covered with snow, but they kept men there and cleaned

them off as fast as the snow came on instead of letting it stay there and spoil the hay.

"However, we are not interested in that part of the contract, other than we bought 700 tons of hay from you at $18.50 per ton, basis state weights and grades. By reason of buying this hay we did not buy other lots we could have contracted for at that time, and now the price has advanced something like $4 or $5 per ton.

"If you positively feel you cannot comply with your contract, we will buy it on the open market and charge you with the difference in price we have to pay now and the price we purchased from you.

"We are somewhat surprised to receive this kind of a letter from a business man. We have extended the time of delivery once, and are quite willing to extend the time of beginning delivery thirty days more, as an accommodation to you, but under no circumstances will we consider cancelling the order, unless you wish to pay us the difference between the present market price and the price for which we purchased the 700 tons of hay from you.

> "Yours truly,
> "(Signed)    The W. W. Robinson Company,
> "W. W. Robinson, Manager."

From these letters it is clear that the subject-matter of this contract was, first, hay grown in Pleasant Valley, Montana, second, amount sold was 700 tons, at $18.50 per ton, subject to Washington weights and grades; third, the hay was, at the time of the making of the contract, in stack and was to be baled and sent to Marion, Montana; fourth, respondent and his balers were to be particular about stripping the stacks, and to have hay clean, any containing snow or ice was to be thrown out; the bottom of the stacks were not to be baled, nor any hay that showed signs of dampness or of being spoiled; fifth, the hay was then owned by, or in the possession of, respondent—it is referred to by appellant as "your hay"—sixth, the hay had been described to appellant. It is referred to by him as, "if it is what you state it is or what you stated you thought it was;" seventh, it was of different grades. Appellant testifies a car each of .

the best and the poorest were to be shipped at the same time to aid in determining the grade.

These references make it clear to us that it was not a general undertaking to deliver seven hundred tons of hay, but a sale of a specific lot of hay, owned or possessed by respondent and then in stack in Pleasant Valley, Montana, which was to be carefully baled and shipped to appellant from Marion, Montana. Under this finding, the case falls within the rule of law that an executory contract for the sale and delivery of a specific chattel then in existence is not breached by the failure to deliver when, before the time of delivery, the chattel is lost or destroyed without the fault of the seller. Benjamin, Sales, 89; Mechem, Sales, § 1100; 35 Cyc. 246; 6 R. C. L. 1005; *International Paper Co. v. Rockefeller*, 161 App. Div. 180, 146 N. Y. Supp. 371; *Ontario Deciduous Fruit Growers' Ass'n v. Cutting Fruit Packing Co.*, 134 Cal. 21, 66 Pac. 28, 86 Am. St. 231, 53 L. R. A. 681; *Dexter v. Norton*, 47 N. Y. 62, 7 Am. Rep. 415; *McMillan v. Fox*, 90 Wis. 173, 62 N. W. 1052.

Judgment is affirmed.

ELLIS, C. J., HOLCOMB, MAIN, and CHADWICK, JJ., concur.