OPINION OF THE COURT
Leonard N. Cohen, J.
The city defendants (the City) move for leave to renew and reargue this court’s decision dated September 22, 1989 (NYLJ, Sept. 28, 1989, at 23, col 2).
The underlying facts, taken from the court’s prior decision, are as follows: The Mayor issued Executive Order No. 50 (E.O. 50) effective April 25, 1980. Subsequently, regulations to implement E.O. 50 were promulgated by the Bureau of Labor *859 Services of the City of New York (BLS) effective January 21, 1982 and the BLS was given the responsibility to monitor compliance with E.O. 50. Section 7 of E.O. 50 entitled "Training Programs” provides "[contracting agencies shall require contractors to make a good faith effort to achieve the ratio of one trainee to four journey-level employees of each craft on each construction project.” Section 3 (j) defines a trainee as "an economically disadvantaged person who qualifies for and receives training in one of the construction trades pursuant to a program other than apprenticeship programs”. Under section 3 (g), an economically disadvantaged person means "a person who, or a member of a family which, is considered economically disadvantaged under applicable law.”
In or about December 1981, the City entered into certain agreements with Seaport Marketplace, Inc. (Seaport) as general contractor, covering construction and renovation work at the South Street Seaport (the project). The agreements between the City and Seaport provided that Seaport would comply with and cause each subcontractor to comply with all provisions of E.O. 50.
In September 1983, Seaport entered into a subcontract with plaintiff in which plaintiff agreed to perform certain electrical work on the project. Their agreement, as well as the agreements between Seaport and the other subcontractors herein, provided that the subcontractor would comply with E.O. 50. Following completion of the project, the Public Development Association deducted the sum of $396,822.27 from its payment to Seaport on the ground that various subcontractors had failed to comply with the trainee provisions of E.O. 50. Included in this deduction is $179,732 attributable to plaintiff.
On December 23, 1987, plaintiff commenced the underlying action for a judgment declaring, inter alia, that E.O. 50 is void and unenforceable and that the City defendants are not entitled to withhold $179,732 from it. Plaintiff also seeks a permanent injunction against the City defendants preventing them from enforcing E.O. 50 and the regulations thereunder to the extent that requirements are imposed for the hiring of trainees by construction contractors on projects involving City contracting agencies.
Plaintiff previously moved for an order granting summary judgment against the City declaring the trainee provisions of E.O. 50 void and unenforceable and enjoining the City from enforcing those provisions. Seaport cross-moved for summary *860 judgment based on plaintiff’s motion requesting alternative relief depending on the court’s disposition of plaintiff’s motion. The City cross-moved to dismiss the complaint and for summary judgment on the grounds that the complaint failed to state a cause of action and was time barred. This court, by decision of September 22, 1989: (1) granted plaintiff’s motion; (2) granted the first branch of Seaport’s cross motion for summary judgment, and (3) denied the City’s cross motion to dismiss the complaint or for summary judgment.
The City now seeks leave to renew that decision on the ground that "the court was not aware that the project was funded in large part by the United States Department of Housing and Urban Development (HUD) and the City, as a recipient of the particular HUD grant involved, was not only authorized, but obligated, by the applicable federal regulations to implement the training program on the Project.” The City also seeks to reargue that portion of the court’s decision which granted summary judgment to Seaport in the amount of $396,822.27 on the first branch of its cross motion.
To the extent that the City seeks renewal, it is relying on facts, i.e., the Federal grant, which were known or should have been known to it at the time of the original motion. For this reason, the court would ordinarily deny the City’s application for renewal (see, Foley v Roche, 68 AD2d 558, 568 [1st Dept 1979]). However, because of the significance of the underlying social issue, which involves the employment of economically disadvantaged people, the court will, in its discretion, grant the City’s application for renewal and reargument (see, Oremland v Miller Minutemen Constr. Corp., 133 AD2d 816, 818 [2d Dept 1987]; Pinto v Pinto, 120 AD2d 337, 338 [1st Dept 1986]; Levinger v General Motors Corp., 122 AD2d 419, 420 [3d Dept 1986]).
According to the City, HUD approved an Urban Development Action Grant (UDAG) for the project in the amount of $20,450,000. The City asserts that Federal regulations relating ° to such funding require the City to implement a training program assuring trainee employment preferences for economically disadvantaged City residents. The City claims to have met its obligations to the economically disadvantaged by requiring that Seaport and its subcontractors comply with the trainee provisions in E.O. 50. The City also contends, as it did previously, that, regardless of the court’s decision, it is entitled to withhold funds from Seaport and the subcontractors *861 which were specifically allocated to the training program to the extent that the program was not implemented.
In opposition, plaintiff contends that E.O. 50 is not authorized by HUD regulations because the regulations fail to make a specific delegation of power to the Mayor and fail to provide guidelines and standards. Plaintiff argues that any authority granted by the HUD regulations is vested in the legislative branch, not the executive, and that the Mayor requires an intervening legislative grant of power. Plaintiff further argues that the provisions of E.O. 50 directly conflict with the pertinent HUD regulations and that a contractor could comply with one set of provisions while being in violation of the other. Plaintiff cites the following differences: definition of persons eligible for favorable treatment, number of trainees to be hired, definition of "good faith effort”, sanctions for noncompliance, residency requirements, and income level. Plaintiff concludes that even if this court were to invalidate E.O. 50, the City would still comply with the HUD regulations. Plaintiff also restates its earlier position that the City’s withholding of funds is an unjustified penalty because plaintiff saved no money and, in fact, incurred additional expenses by being forced to hire journeymen instead of trainees. Plaintiff’s remaining arguments concerning Seaport’s notice of claims and the impropriety of the instant motion are rendered moot by a stipulation between Seaport and the City and the court’s decision to allow renewal and reargument.
Seaport requests that if the court adheres to the original decision it be granted the relief set forth therein. In the alternative, if the court reverses the prior decision, Seaport requests that all claims against it be dismissed.
In its agreement with the City, Seaport agreed to comply with the UDAG and HUD regulations as well as E.O. 50. In turn, compliance with these regulations was agreed to by the subcontractors on the project. Congress enacted the Housing and Community Development Act of 1977 (42 USC § 5318) authorizing HUD to make UDAGs to cities and urban counties experiencing economic distress. The HUD regulations governing UDAGs, in 24 CFR part 570, subpart G, specify that the City, as a UDAG recipient had to "comply with * * * [s]ection 3 of the Housing and Urban Development Act of 1968, as amended, and implementing regulations at 24 CFR Part 135.” (24 CFR 570.458 [c] [14] [IX] [D].) The HUD regulations require that: "to the greatest extent feasible opportunities for training and employment arising in connection with *862 the planning and carrying out of any project assisted under any such program be given to lower income persons residing in the area of such project”. (24 CFR 135.1 [a] [2] [i].) HUD allows the grant recipient to choose specific programs tailored to local needs (Dixson v United States, 465 US 482, 487 [1984]; Latinos Unidos de Chelsea en Accion [Lucha] v Secretary of Hous. & Urban Dev., 799 F2d 774, 776 [1st Cir 1986]).
The Mayor, whose authority is at issue herein, chose E.O. 50 which targets economically disadvantaged persons for the training program. The differences between the Federal regulations and E.O. 50 noted by plaintiff must be viewed in the context of the shared goal of both to help those who have less than a fair share of the benefits of our society. Viewed in that context, the distinctions between the Federal regulations and E.O. 50 are of little significance.
The real issue here is the Mayor’s authority to implement E.O. 50. In the prior decision dated September 22, 1989, this court held that "there has been no City Council or other legislative grant of power” to permit the Mayor to implement the training program on the project. (Supra, at 23, col 3.) The City now argues that the HUD and UDAG regulations provide the required legislative grant.
"[T]he general power to enter into contracts which is bestowed upon the executive branch of government ordinarily cannot serve as a basis for creating a remedial plan for which the executive never received a grant of legislative power” (Subcontractors Trade Assn. v Koch, 62 NY2d 422, 428 [1984]). Executive orders have been invalidated because the Mayor has acted without a legislative grant from the City Council or State or where "there is no Federal statute which the Mayor might be implementing” (Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 357 [1985]).
In White v Massachusetts Council of Constr. Employers (460 US 204 [1983]), the Mayor of Boston issued an executive order which provided employment preferences in construction projects for Boston residents, minorities and women. The Supreme Court held that since the Mayor’s order was applied to projects funded in part with funds obtained from certain Federal programs (primarily the UDAG program), the employment preferences required by the executive order were not barred by the Commerce Clause of the US Constitution and were "affirmatively sanctioned” by the pertinent regulations of *863 those programs. The court stated that: "An examination of the applicable statutes reveals that these federal programs were intended to encourage economic revitalization, including improved opportunities for the poor, minorities, and unemployed. Examination of the regulations set forth in the margin indicates that the Mayor’s executive order sounds a harmonious note; the federal regulations for each program affirmatively permit the type of parochial favoritism expressed in the order” (supra, at 213). The decision further provided that: "Insofar as the Mayor’s executive order was applied to projects funded in part with funds obtained from the federal programs described above, the order was affirmatively sanctioned by the pertinent regulations of those programs.” (Supra, at 215.)
Based on the implication of Under 21 v City of New York (supra) that a legislative grant could come from the Federal Government for the implementation of a program such as E.O. 50 and the decision in White v Massachusetts Council of Constr. Employers (supra, at 215) which granted employment preferences "affirmatively sanctioned” by HUD and UDAG regulations, this court concludes that the trainee provisions of E.O. 50 are valid. The provisions of E.O. 50 are underwritten by, or in Justice Rehnquist’s words "affirmatively sanctioned” by, the applicable Federal regulations.
The cases relied upon by plaintiff in opposition to the City’s motion are distinguishable from the circumstances at bar. For example, Matter of Liquid Asphalt Distribs. Assn. v White (137 AD2d 913 [3d Dept 1988]) involved State-funded contracts with no Federal connection. In Rex Paving Corp. v White (139 AD2d 176 [3d Dept 1988]), the court rejected plaintiff’s argument that State statutes which incorporated Federal acts by reference violated the State Constitution. The court found that the Department of Transportation was acting under the direction of the State Legislature and not under a Federal delegation of authority. Matter of Prospect v Cohalan (65 NY2d 867 [1985]) is also distinguishable. There, the court held that the County Executive’s order which implemented a county disaster plan was a usurpation of the legislative function because the Executive Law specifically delegated the formulation of disaster plans to the Legislature.
With respect to the sum of $179,732 which was withheld from plaintiff by the City, plaintiff contends that it is entitled to this amount because it made good-faith efforts to hire trainees, hired journeymen at greater expense and performed *864 the contract. According to plaintiff, the withheld funds represent a penalty and results in a windfall to the City. The City argues that the $496,822.27 withheld from Seaport, including the $179,732 withheld from plaintiff, represents a deduction for actual costs, i.e., the wages and fringe benefits that would have been paid to trainees who, in fact, were not employed on the project. The City maintains that the plaintiff and the other subcontractors are not entitled to remuneration for services which were never provided.
If plaintiff and the other subcontractors made good-faith efforts to hire trainees who were in fact unavailable then their performance of this obligation may be excused. However, the subcontractors are not entitled to funds specifically allocated to trainees who were not employed (see, Sokoloff v National City Bank, 208 App Div 627 [1st Dept 1924], affd 239 NY 158; International Paper Co. v Rockefeller, 161 App Div 180 [3d Dept 1914]; John D. Picone Inc. v City of New York, index No. 96200/78 [Civ Ct, NY County, Apr. 9, 1980]).
This court notes that the City’s unilateral determination in this regard has not as yet been subjected to discovery. Further, at the time of the original motion and cross motions, plaintiff and five other subcontractors argued that issues of fact exist including but not limited to, whether the subcontractors actually complied with the training programs, the possibility of City error in compiling the trainee deficits and whether the City improperly refused to allow the deficit to be made up in other projects. Those issues still exist, notwithstanding the revitalization of the training provisions of E.O. 50, and will require a trial.
Accordingly, based on the foregoing, the City’s motion for leave to renew and reargue this court’s decision of September 22, 1989 is granted. Upon such renewal and reargument, the September 22, 1989 decision is modified as follows: (1) plaintiff’s motion for summary judgment is denied in its entirety; (2) Seaport’s cross motion for summary judgment is denied; and (3) the City defendant’s cross motion for summary judgment is granted to the extent that plaintiff’s causes of action against the City defendants for a declaratory judgment and injunctive relief are dismissed.