*844 OPINION OF THE COURT
Vito M. DeStefano, J.
In this action for a declaratory judgment, etc., the plaintiffs move, inter alia, for summary judgment pursuant to CPLR 3212, seeking a declaration that they are entitled to retain a deposit paid by the defendant for the purchase of real property based upon the defendant’s failure to close on the “time of the essence” closing date. The plaintiffs also seek an award of attorneys’ fees, to be determined at inquest, based upon the breach of contract, and dismissal of the defendant’s answer and counterclaims.
The plaintiffs assert that on November 18, 2008, they entered into an agreement with the defendant whereby the defendant was to purchase real property, consisting of a residence and other improvements, located at 108 Stonebridge Court, New Hartford, New York for $1.8 million, with a deposit of $180,000 to be paid on the signing of the contract, the balance to be paid at closing (motion, exhibit D, residential contract of sale ¶ 3). It is undisputed that the deposit was paid and held in escrow by the plaintiffs’ attorney (motion, exhibit D, residential contract of sale ¶ 6; affidavit in support of motion at 2).
The contract contains the following relevant provisions:
“15. Closing Date and Place. Closing shall take place at the office of Seller’s attorney at 10:00 a.m. on or about December 12, 2008 or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of lender’s attorney, if any, in Nassau or New York County . . .
“23. Defaults and Remedies.
“(a) If Purchaser willfully defaults hereunder, Seller’s sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller’s damages in case of Purchaser’s default might be impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty . . .
“41. In the event that either party commences an action or proceeding to enforce their rights under this Agreement, then the prevailing party shall be entitled to recover its reasonable legal fees and expenses from the other party which are incurred in such action or proceeding . . .
*845 “47. Supplementing Paragraph 15. Purchaser shall on five (5) business days notice to Seller be entitled to adjourn the closing on one or more occasion but in no event to a date beyond December 31, 2008 (the ‘Adjourned Closing Date’) and time Shall be Of the Essence with respect to Purchaser’s obligations to close on the Adjourned Closing Date. If the closing is adjourned past December 12, 2008, then all adjustments to be made pursuant to Paragraph 18 of the Contract shall be made at the closing as of December 12, 2008, and in addition to any other amounts due Seller by Purchaser, Purchaser shall reimburse Seller the per diem costs of the Seller’s existing mortgages (in the amount of $288.36 per day) and insurance premiums for the period December 12, 2008 through the Adjourned closing Date.”
Prior to the scheduled closing date, the plaintiffs signed deed and transfer tax documents and arranged for the delivery of payoff letters from the first and second mortgages as well as the satisfaction of a third mortgage.[1]
On December 10, 2008, the defendant requested an adjournment of the closing date until December 19, 2008, asserting that “his lender was not ready to close” (motion, exhibit E).
In a letter dated, December 24, 2008, the defendant terminated the contract and asked that the plaintiffs’ counsel “release Purchaser’s $180,000.00 downpayment [sic] from escrow, and return it to me in the enclosed FedEx envelope ... Be advised that as directed you are not to release the Purchaser’s down-payment [sic] from escrow to anyone other than Purchaser” (motion, exhibit G, letter dated Dec. 24, 2008).
On this motion, plaintiffs argue that inasmuch as they were ready, willing and able to perform and that the closing did not take place on the scheduled date because of defendant’s wrongful termination of the contract, they are entitled to a declaration that they may retain the down payment as liquidated damages.
In opposition to the motion, the defendant asserts that on December 11, 2008,
“without advance warning of any kind — I became *846 aware that I had lost nearly all of my personal assets as a result of the fraudulent scheme of Bernard Madoff . . . One of the many, many hardships I suffered as a result of Mr. Madoff s crimes was that my performance and ability to close pursuant to the Contract terms was rendered impossible. As a result, I terminated the Contract . . . and requested a return of my $180,000 down payment, which I desperately need to meet creditor and family obligations” (defendant’s affidavit in opposition to motion at 2).
In support of his contention regarding impossibility of performance, the defendant cites a number of cases, none of which are apposite. In this regard, the Court of Appeals, in Kel Kim Corp. v Central Mkts. (70 NY2d 900, 902 [1987]), held that
“[w]hile . . . defenses [such as impossibility] have been recognized in the common law, they have been applied narrowly, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances (see, Wallach, The Excuse Defense in the Law of Contracts: Judicial Frustration of the U.C.C. Attempt to Liberalize the Law of Commercial Impracticability, 55 Notre Dame Law 203, 207 [1979]). Impossibility excuses a party’s performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract (see, 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275; Ogdensburg Urban Renewal Agency v Moroney, 42 AD2d 639).”
In addition, in 407 E. 61st Garage v Savoy Fifth Ave. Corp. (23 NY2d 275, 281-282 [1968]) the Court of Appeals stated:
“Generally, . . . the excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, vis major, or by law (International Paper Co. v. Rockefeller, 161 App. Div. 180, 184; 6 Williston, Contracts [Rev. ed.], § 1935; 10 N. Y. Jur., Contracts, § 357; Restatement, Contracts, § 457). Thus, where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent *847 of insolvency or bankruptcy, performance of a contract is not excused (Central Trust Co. v. Chicago Auditorium, 240 US 581; Cameron-Hawn Realty Co. v. City of Albany, 207 NY 377, 380-381; Updike v. Oakland Motor Car Co., 229 App. Div. 632, 635; Downey v. Shipston, 206 App. Div. 55, 58; International Paper Co. v. Rockefeller, 161 App. Div. 180, 185, supra, Stannard v Reid & Co., 114 App. Div. 135, 136; 6 Williston, Contracts [Rev. ed.], § 1963; see, generally, 10 N. Y. Jur., Contracts, §§ 356, 357, 359, 372; Ann.: Contract-Performance-Impossibility, 84 A L R 2d 12, esp. pp. 21-24, 28-29 and 52-55; Restatement, Contracts, §§ 454, 455, 457, 467). Notably, in this case, Savoy does not even assert that bankruptcy or insolvency was a likely consequence of continuing operation of the hotel. Further, in view of its admittedly contemporaneous financial difficulties, Savoy could and should have insisted that the agreement provide for the anticipated contingency of economic hardship (cf. Restatement, Contracts, § 457). In sum, performance by Savoy was at all times possible, although unprofitable, since the hotel could simply have remained in business, and the legal excuse of impossibility of performance would not be available to it.”
Also relevant to the court’s determination is Di Scipio v Sullivan (30 AD3d 660, 661 [3d Dept 2006]), in which the Third Department held that
“ *[i]t has long been the rule in New York that a purchaser who defaults on a real estate contract without lawful excuse cannot recover the down payment’ (Korabel v Natoli, 210 AD2d 620, 621-622 [1994] . . .). This is the result ‘notwithstanding that a seller’s actual damages may be less than a given down payment’ (Barton v Lerman, 233 AD2d 555, 556 [1996]). Therefore, absent a legally cognizable excuse for defendant’s failure to perform the contract, plaintiff may retain the down payment . . . Defendant’s asserted excuse — the illiquidity of the estate and its inability to obtain financing — is unavailing” (citations omitted).
At bar, therefore, that the defendant may have been the victim of an unfortunate fraud which impacted on his assets and finances would not excuse his performance under the contract of sale. Furthermore, even assuming that the defendant could *848 raise impossibility as a defense to nonperformance based on a change in financial condition occasioned by the actions of Bernard Madoff, he has utterly failed to provide any details as to the amounts lost, the nature of his lost investments, or the actual state of his current finances and assets. In short, the opposing papers are wholly insufficient to raise any issue regarding impossibility, assuming it were otherwise a viable defense.
Defendant also argues, in opposition to the motion, that awarding summary judgment would be premature because
“genuine issues of fact which require discovery [exist]. For example . . . because it is in the Court’s equitable discretion of whether to excuse performance, the Sassowers’ ability to demonstrate any actual damages or loss whatsoever in connection with the Contract termination is a factor the Court may in its discretion consider. . . . [Defendant] has propounded several interrogatories and document demands seeking information on this issue, but has not received any response” (Affidavit of Jeffrey A. Miller, Esq. in opposition to motion at 9).
However, contrary to the defendant’s contention, the plaintiffs’ alleged inability to demonstrate actual damages in this declaratory judgment action is wholly irrelevant to the defendant’s defense of impossibility.
Based on the foregoing, the plaintiffs’ motion for summary judgment is granted. The court hereby declares that the plaintiffs, based on the defendant’s breach of the contract of sale dated November 18, 2008, are entitled to retain the $180,000 which was paid by the defendant as a down payment towards the purchase of the residence located at 108 Stone-bridge Court, New Hartford, New York. In addition, the plaintiffs are hereby awarded counsel fees based on the defendant’s breach of the contract of sale, as required therein, the amount of which will be fixed at a hearing. The affirmative defenses and counterclaims in the defendant’s answer are dismissed.[2]

. The plaintiffs claim that as a result of defendant’s breach, discussed infra, they have been forced to continue paying the carrying charges on the premises, which they previously vacated, in an amount exceeding $16,000 monthly.

. The court notes that the defendant has advanced 14 affirmative defenses in his answer and two counterclaims. Nowhere in his opposition to the motion does the defendant offer any evidence in regard to these affirmative defenses, except for the eleventh affirmative defense, which concerns impossibility, or as to the counterclaims, which seek a return of the down payment and counsel fees.